Martin W. Aron, Esq. (Bar ID No. 036011984)
Kajal J. Patel, Esq. (Bar ID #242432017)
JACKSON LEWIS P.C.
200 Connell Drive, Suite 2000
Berkeley Heights, New Jersey 07922
(908) 795-5200
ATTORNEYS FOR DEFENDANTS

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| GISSELLE GALANO, | : | |
| | : | Civil Action No. |
| Plaintiff, | : | |
| | : | |
| vs. | : | |
| | : | **NOTICE AND PETITION FOR** |
| PASSAIC FAMILY HEAD START, | : | **REMOVAL OF CASE FROM THE** |
| INC., a corporation, ROBIN NAYDA | : | **SUPERIOR COURT OF NEW JERSEY,** |
| BURGOS, individually and DR. LILLIAN | : | **LAW DIVISION, PASSAIC COUNTY** |
| M. RAMOS, individually, | : | |
| | : | |
| Defendants. | : | |
| | : | |

TO:   William T. Walsh, Clerk of Court
      United States District Court for the District of New Jersey
      Martin Luther King Building & U.S. Courthouse
      50 Walnut Street, Room 4015
      Newark, New Jersey 07101

      Paula M. Dillon, Esq.
      Goldman Davis Krumholz & Dillon, P.C.
      Three University Plaza, Suite 410
      Hackensack, NJ 07601
      Attorneys for Plaintiff

Pursuant to 28 U.S.C. §§ 1332, 1441(b), and 1446, Defendants Passaic Family

Head Start, Inc., Robin Nayda Burgos and Dr. Lillian M. Ramos (hereinafter referred to as

"Defendants") respectfully submit this Notice and Petition for Removal of this case from the

Superior Court of New Jersey, Law Division, Passaic County, bearing Docket No. PAS-L-2797-

21, and states as follows as grounds for removal:

1.　　On or about August 31, 2021, Plaintiff Gisselle Galano ("Plaintiff"), filed a civil action captioned <u>Gisselle Galano v. Passaic Family Head Start, Inc., Robin Nayda Burgos and Dr. Lillian M. Ramos</u>, Docket No. PAS-L-2797-21, in the Superior Court of New Jersey, Law Division, Passaic County. A true and correct copy of the Complaint in that action is attached hereto as Exhibit A.

2.　　Defendants were served with a copy of the summons and complaint on or about September 3, 2021. The summons and complaint were the initial pleadings received by Defendants setting forth the claims upon which Plaintiff's action is based.

3.　　This notice and petition is timely filed within the provisions of 28 U.S.C. § 1446, as Defendants have effected removal within thirty (30) days of receipt of the initial pleading setting forth the claims for relief upon which the complaint is based. <u>See</u> 28 U.S.C. § 1446.

4.　　No proceedings have taken place in the state court action. Defendants have not served an answer or responsive pleading to Plaintiff's Complaint or made any appearance or argument before the Superior Court of New Jersey.

5.　　Removal is proper under 28 U.S.C. § 1441(a) because this Court has original jurisdiction of this action pursuant to 28 U.S.C. § 1331 as this action involves claims that relate to the laws of the United States – specifically, the Families First Coronavirus Response Act ("FFCRA") and Emergency Paid Sick Leave Act ("EPSLA").

6.　　As set forth in the Complaint, Plaintiff asserts the following causes of action: (1) a violation of the FFCRA and EPSLA; (2) wrongful termination in violation of public policy; (3) a <u>Pierce</u> claim; (4) breach of contract; (5) age discrimination; and (6) aiding and abetting pursuant to the New Jersey Law Against Discrimination ("LAD"). (<u>See</u> Exhibit A, at Counts I-VI.)

7.      Accordingly, this action is removable to this Court on the ground that original jurisdiction over Plaintiff's claims exists pursuant to 28 U.S.C. § 1331, by virtue of its federal question jurisdiction arising out of Plaintiff's FFCRA and EPSLA claims.

8.      To the extent any of Plaintiff's claims do not relate to the FFCRA and EPSLA, this Court nevertheless has supplemental jurisdiction over those claims pursuant to 28 U.S.C. §§ 1367 and 1441(c).

9.      Venue is proper in this Court pursuant to 28 U.S.C. § 1441(a).

10.     Defendants file this Notice of Removal without waiving any defense to Plaintiff's claims or conceding that Plaintiff has pled claims upon which relief can be granted.

11.     Pursuant to 28 U.S.C. § 1446(d), a copy of this Notice and Petition of Removal is being served upon all parties and filed with the Clerk of the Superior Court of New Jersey, Law Division, Passaic County.

12.     By copy of this document and in accordance with the Certificate of Service, Defendants are providing notice to all Parties in this action of the filing of this Notice of Removal pursuant to 28 U.S.C. § 1446(d).

        **WHEREFORE**, Defendants respectfully request that the within action, now pending in the Superior Court of New Jersey, Law Division, Passaic County, be removed to the United States District Court for the District of New Jersey.

Respectfully submitted,

JACKSON LEWIS P.C.
200 Connell Drive, Suite 2000
Berkeley Heights, NJ 07922
(908) 795-5200

By:   */s/ Martin W. Aron*
      Martin W. Aron
      Kajal J. Patel
      Attorneys for Defendants

Dated:   October 1, 2021

4826-1007-8460, v. 1

# Exhibit A

PAULA M. DILLON # 001691992
**GOLDMAN DAVIS KRUMHOLZ   & DILLON, PC**
**Three University Plaza, Suite 410**
**Hackensack, New Jersey 07601**
**(201) 488-2600**
**(201) 488-5059 (Fax)**
**Attorneys for Plaintiff, Gisselle Galano**

---

| | |
|---|---|
| GISSELLE GALANO, | SUPERIOR COURT OF NEW JERSEY |
| Plaintiff | LAW DIVISION |
| | COUNTY OF PASSAIC |
| vs. | DOCKET NO.: |
| PASSAIC FAMILY HEAD START, INC., a corporation, ROBIN NAYDA BURGOS, individually and DR. LILLIAN M. RAMOS, individually, | CIVIL ACTION |
| Defendant(s) | |

---

## COMPLAINT AND JURY DEMAND

Plaintiff, Gisselle Galano, by way of Complaint against Passaic Family Head Start, Inc., a corporation, Robin Nayda Burgos, individually, and Dr. Lillian M. Ramos, individually (collectively "Defendants") says:

### THE PARTIES

1.       Plaintiff, Gisselle Galano (hereinafter "Plaintiff" or "Ms. Galano) resides at 180 Lafayette Avenue, Passaic, New Jersey 07055.

2.       Gisselle Galano was employed by the Passaic Family Head Start, Inc. (hereinafter "PCHS") for 19 years, from September 2001 until the termination of her employment on or about June 17, 2020 as a Head Teacher.

3.       Defendant Passaic Family Head Start Inc. is a corporation located 68 Third Street,

Passaic, New Jersey 07055, County of Passaic, which serves preschoolers aged three and four years old..

4.      During all times relevant to the within matter, Individual Defendant, Robin Nayda Burgos was employed by PCHS as the Director of the program.   Upon information and belief, Defendant Burgos was a resident of New Jersey.   At all relevant times, Defendant Burgos was a member of PCHS' upper management, with the authority to supervise and direct the Plaintiff, and terminate her employment.

5.      During all relevant times, Individual Defendant, Dr. Lillian M. Ramos, was employed by PCHS as the Executive Director.   Upon information and belief, Defendant Ramos was a resident of New Jersey.   At all relevant times, Defendant Ramos was a member of PCHS' upper management, with the authority to supervise and direct the Plaintiff, and terminate her employment.

6.      At all relevant times, Plaintiff was an "employee" of PCHS as that term is defined under the New Jersey Law Against Discrimination (hereinafter 'NJ LAD"), N.J.S.A. 10:5-1 *et. seq*

7.      During all time relevant hereto, PCHS was Plaintiff's "employer" as that term is defined by the NJ LAD, N.J.S.A. 10:5-12 *et. seq.*

## FACTS COMMON TO ALL COUNTS

8.      Plaintiff was 64 years old at the time of her termination, having a birth date of February 8, 1956.

9.      In 2018, Plaintiff's elderly mother, then aged 90, and suffering from various serious health conditions, moved into Plaintiff's residence to live with her.

10.      As the Head Teacher at PCHS, Gisselle Galano was assigned to work with the

pre-kindergarten children aged three to four years old.    The school year ran from September through June 30th.   The program did not run during the summer at this location.

11.    At all times relevant to the within matter, Plaintiff performed her job in accordance with the expectations of her employer.

12.    On or about November 14, 2019, Plaintiff was involved in a work related accident when she fell on a recently mopped floor during parent teacher conferences, causing injury to both of her knees.

13.    Plaintiff reported the accident to her employer and sought treatment for these orthopedic injuries to her left and right knee. As a result of the injury, Plaintiff was caused to be out of work for approximately two months, and came under the care of various medical providers.

14.    In retaliation for Plaintiff having reported the work related injury, PCHS engaged in a series of retaliatory actions.   First, the Director robin Burgos unilaterally changed the location and time of Plaintiff's medical appointments without Plaintiff's knowledge or consent. In addition, PCHS issued Plaintiff a disciplinary notice for sustaining the work related injury.

15.    As of January 30, 2020, New Jersey Governor Murphy had set forth guidelines by the "World Health Organization" ("WHO") declaring COVID-19 as a "Public Health Emergency of International Concern."

*Executive Order No. 102:*

16.    On February 3, 2020, Governor Murphy issued Executive Order No. 102, establishing a Coronavirus Task Force.   The Coronavirus was described by Governor Murphy as a severe, potentially fatal respiratory illness that could result in Pneumonia, acute respiratory distress syndrome, septic shock, and multi-organ failure.

17.     The Centers for Disease Control and Prevention ("CDC") identified that there were individuals with certain medical conditions who would be more likely to get severely ill from COVID-19, requiring hospitalization, intensive care, a ventilator to help them breathe, and/or death.   In addition, "older adults" were more likely to get severely ill from COVID-19 along with individuals with individuals suffering from chronic health conditions.

*Executive Order No. 103:*

18.     Governor Murphy issued Executive Order No. 103 on March 9, 2020, declaring a "Public Health Emergency and State of Emergency" throughout the state of New Jersey.   The Order further declared that the International Health and Regulations Emergency committee of WHO declared the outbreak a public health emergency requiring an international response.

19.     Thereafter, Governor Murphy continued to issue a series of Executive Orders to protect the public health, safety, and welfare against the emergency created by COVID-19.

*Executive Order No. 104:*

20.     On March 16, 2020, Governor Murphy issued Executive Order No. 104, which *closed schools*, casinos, racetracks, gyms, entertainment centers, and reduced the hours of non-essential businesses.

21.     On or about March 18, 2020, the PCHS center was closed to in-person learning, and Defendants required Plaintiff and other staff members to work remotely.

*Executive Order No. 107:*

22.     On March 21, 2020, Governor Murphy issued Executive Order No. 107 which was a stay at home order declaring that all businesses or non-profits of the state whether closed or open to the public, were required to accommodate their workforce, wherever practicable for telework, or work-from-home arrangements.

*Executive Order No. 110:*

23.     On March 25, 2020, Governor Murphy issued Executive Order No. 110 closing *child care centers* "unless they could comply with heightened health and safety standards and would agree to solely service the children of essential workers".

*Executive Order No. 122*

24.     On April 8, 2020, Governor Murphy issued Executive Order No. 122 which incorporated previous Executive Orders relating to the COVID-19 pandemic, along with reporting on the rise in COVID-19 cases.   The Order reiterated the CDC statements that "older adults and people of any age who have serious underlying medical conditions might be at higher risk for severe illness from COVID-19".

25.     In April 2020, while the school was effectively "shut down", Plaintiff was directed by Defendant Burgos/Ramos to physically go over to the school and fax a copy of a child's file to Burgos/Ramos.   The school was being investigated by DYFS for an incident related to that child.   Plaintiff had not been at the school on the day of the alleged incident, and was not involved.    Plaintiff objected to the directive because she believed it was improper and illegal for her to obtain a child's confidential file, and refused to go over to the school.   Dr. Ramos expressed her anger to Plaintiff.

26.     Beginning on or about May 15, 2020, Director Robin Nayda Burgos sent out Email(s) to the staff requiring its employees to physically return to work May 26th and May 27th , despite the continued shut down of the State of New Jersey.

27.     Plaintiff, along with several other staff members at PCHS wrote letters to PCHS expressing their concerns about exposure to the coronavirus, and objected to the mandated return to work.

28.     Plaintiff sent an email on May 15th to Director Robin Nayda Burgos that she could not return to work in person based on her concerns about exposing her elderly mother to COVID-19 since she was in a high risk category for contracting the virus.   Plaintiff offered to continue to work remotely.

29.     There was a second, "updated", memo also dated May 15, 2020, which required the staff to return to work in June for five (5) days.   Plaintiff was again concerned about exposing her elderly mother to COVID-19.   Plaintiff offered to continue to work remotely.

30.     Despite Plaintiff's response about the risk of harm to her mother if she returned to in person work in June, Defendant Burgos continued to harass Plaintiff with emails about her ability to report to work in June.

*Executive Order No. 149:*

31.     On May 29, 2020, Governor Murphy issued Executive Order No. 149 which rescinded Executive Order No. 110, and effective June 15, 2020, permitted "child care facilities" to resume operations, provided they complied with COVID-19 Child Care and Youth Summer Camp Standards and other applicable statutes, regulations, and Executive Orders.

32.     In an email of May 29, 2020, Defendant Burgos required Plaintiff to confirm by June 2nd, whether she would physically return to work for the period June 2 through June 15, 2020.   If she did not return, she would no longer receive her full salary.

33.     When Plaintiff received this information, she checked the main Office of Head Start's website which stated that employees were to be paid their *full rate of pay until June 30th*.

> In recognition of the unique circumstances associated with COVID-19, OHS is *directing programs to continue to pay wages and provide benefits for staff unable to report to work* during center closures necessary to address COVID-19.   Programs *do not have the discretion to deny staff their regular wages and health benefits.* Regardless of what staff can do remotely, *all staff should be paid for hours they normally worked before the closure.* (Emphasis added).

34.     Plaintiff believed that the reduction in the rate of pay offered by PCHS was in violation of the policy posted by Head Start on its website; caring for her mother who was "particularly vulnerable to COVID-19" qualified her for leave under the FFCRA; Head Start's own rules and regulations, and that offering Plaintiff a reduction in her salary was a Breach of Contract and in violation of the New Jersey Wage Payment Act and retaliatory.

35.     On June 1, 2020, Plaintiff replied to Defendant Robin Burgos in an email sent at 9:02 AM.   Plaintiff objected to the position taken by PCHS regarding payment for the remainder of the year:   "Although I am physically unable to come into our school on the assigned dates of June 8, 9, 12, or 15th,. I am able to continue to work remotely.   As you know, I am *the sole provider of care for my ninety two year old mother*.   According to Head Start I am entitled to *full pay up till June 30 or end of our academic school year…*" (Emphasis added).   Plaintiff included the posting by the Office of Head Start regarding payment of wages to staff during the pandemic.

36.     The last official day of school was June 17, 2020.

37.     Plaintiff requested an accommodation to continue to work remotely through the end of the school year to avoid exposure of COVID-19 to her ninety-two year old mother, which was denied. Plaintiff explained in an email that she was unable to physically report to work on one of the assigned days because she was "…the sole provider of care for my ninety two year old mother."

38.     Plaintiff received an email on June 5, 2020 at 2:02 PM from Executive Director Ramos denying Plaintiff's request for an accommodation to continue to work remotely through

the end of the year, to prevent the exposure of her mother to Covid-19.

39.     On or about June 10, 2020, Plaintiff attended a (mandatory) zoom conference with Ms. Liteove Tighe, Director of Early Childhood Education, Passaic Board of Education, that had been previously scheduled.  During the meeting, Ms. Tighe thanked the staff at PCHS for a job well done. At the time, Ms. Tighe provided no information regarding the upcoming 2020-2021 academic school year.

40.     On or about June 10, Plaintiff became aware that PCHS had sent a notification via email to every staff member, except Plaintiff, with instructions for the following two weeks of work.

41.     On or about June 11, 2020, Plaintiff submitted all outstanding paperwork that was due.  The last day of school was June 17, 2020.

42.     Plaintiff received a letter from Dr. Lilian Ramos dated June 30, 2020, terminating her employment "as of June 30, 2020."

**FIRST COUNT**
**FAMILIES FIRST CORONAVIRUS RESPONSE ACT (FFCRA)**
**EMERGENCY PAID SICK LEAVE ACT (EPSLA)**
**(As to PCHS)**

Plaintiff repeats and realleges each of the foregoing allegations as if set forth at length herein.

43.     In response to the Covid-19 pandemic, on or about March 18, 2020, Congress enacted the Families First Coronavirus Response Act ("FFCRA"). Pub. L. No. 116-127, 134 Stat. 178 (Mar. 18, 2020).

44.     As relevant to this lawsuit, the Act required employees of covered employers to be provided up to ten paid sick days (up to 80 hours) at the employee's regular rate of pay where

the employee was unable to work because the employee was quarantined and/or experiencing Covid-19 symptoms and seeking a medical diagnosis.

45.     On or about March 27, 2020, Congress enacted the Coronavirus Aid, Relief and Economic Security Act (the "CARES Act") which amended the FFCRA in part and provided additional technical corrections. Pub. L. No. 116-136, 134 Stat. 281 (Mar. 27, 2020).

46.     Division E of the FFCRA is the Emergency Paid Sick Leave Act ("EPSLA") which took effect on April 2, 2020 and was set to expire on December 31, 2020.   FFCRA §§ 5101-5111, §§ 5108-5109.

47.     As relevant to this lawsuit, the EPSLA required private employers with less than 500 employees to provide two weeks of paid sick leave to an employee who is: unable to work due to a diagnosis of Covid-19; experiencing symptoms of Covid-19 and seeking a medical diagnosis; caring for an individual subject to a quarantine or isolation order; or instructed by a health care professional to be quarantined.

48.     Defendant Head Start is a covered employer under the FFCRA and EPSLA.

49.     Plaintiff was entitled to two weeks of paid emergency sick leave under the EPSLA.

50.     Plaintiff advised her employer that she was caring for elderly mother who was subject to quarantine or an isolation order.

51.     In a letter from Dr. Lilian Ramos of Head Start, Defendants terminated Plaintiff effective June 30, 2020 in retaliation for seeking leave in violation of the Emergency Paid Sick Leave Act and/or FFCRA.

52.     Defendants' actions were malicious and/or Defendants acted with wanton and willful disregard of Plaintiff's rights.

53.     As a result of the actions of the defendant(2) as aforesaid, Plaintiff was caused to sustain a loss of employment and income, and was caused to sustain emotional and psychological distress and harm, embarrassment, and a continuous and permanent interference with the prospect of future economic advantage and with the ability to obtain future employment.

**WHEREFORE**, Plaintiff demands judgment against any and all of said Defendants, jointly and individually, for harm suffered as a result of defendants' conduct and seeks damages including but not limited to: back pay, lost benefits, reinstatement or front-pay, other compensatory damages, emotional distress damages, liquidated damages, equitable relief, pain and suffering, punitive damages, statutory penalties, interest, compensation for the negative tax consequences of receiving a damage award in the form of a one-time lump sum, attorneys' fees, costs of suit, and other relief that the Court may deem just and proper, on this Count of the Complaint.

### SECOND COUNT
### WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY (PIERCE and WORKERS' COMPENSATION RETALIATION CLAIM)
### (As to PCHS)

Plaintiff repeats and realleges the foregoing paragraphs as though fully set forth at length herein and says:

54.     On or about November 14, 2019, Plaintiff was involved in a work related accident when she fell on a recently mopped floor during parent teacher conferences, causing injury to both of her knees, for which Plaintiff sought workers' compensation benefits, including but not limited to, treatment for her orthopedic injuries and a request to be out of work for a period of time.

55.     Defendants further retaliated against Plaintiff after sustaining a work related injury by issuing her a disciplinary action as a result of the work related injury, in violation of the

Workers' Compensation Act, N.J.S.A. 34:15-1 *et seq.*

56.     The defendants, by their foregoing described actions, terminated the Plaintiff, and thereby retaliated against her based on her having reported a claim for workers' compensation and sought benefits from the Defendants.

57.     There exists a common law cause of action for civil redress for a retaliatory termination for filing for workers' compensation benefits that is specifically declared unlawful under N.J.S.A. 34:15-39.1 and 39.2.   Lally v. Copygraphics, 173 N.J.Super. 162, 179 (App. Div. 1980), aff'd 85 N.J. 668, 670 (1981).

58.     Public policy of New Jersey provides that workers who are injured in the course of their duties should have their jobs protected to the extent reasonably possible without causing undue hardship to the employer.   By terminating the plaintiff after seeking workers' compensation benefits, Defendants violated New Jersey Public Policy.

59.     New Jersey common law provides that an employee has a private cause of action where an employer discharges an employee contrary to a clear mandate of public policy. Pierce v. Ortho Pharm. Corp., 84 N.J. 58 (1980).

60.     The Defendants, by their foregoing conduct in terminating the Plaintiff, have retaliated against the Plaintiff and denied the Plaintiff opportunities for employment in violation of common law as set forth in Pierce v. Ortho Pharm. Corp., 84 N.J. 58 (1980) and Lally v. Copygraphics, 173 N.J.Super. 162, 179 (App. Div. 1980), aff'd 85 N.J. 668, 670 (1981).

61.     As a result of the Defendant's intentional and outrageous actions towards the Plaintiff, as detailed in the previous paragraphs of this Complaint, the Plaintiff has suffered, and continues to suffer, emotional distress, anxiety, embarrassment, humiliation, monetary, reputational, and other personal injuries.

62.     It is a clear mandate of public policy that employees who have suffered injuries in the course of their employment should not be obstructed or deterred in their pursuit of claims for benefits under the Workers' Compensation Act, N..J.S.A. §34:15-1 *et seq.*

63.     The Plaintiff complied with public policy when she filed a claim for workers' compensation benefits which consisted of treatment and time off for her injuries, complied with treatment, and subsequently filed a formal Claim Petition.    As a direct result of these actions, Plaintiff was discharged by the Defendants in a clear violation of common law and public policy.

64.     As a result of the actions of the defendant(s) as aforesaid, plaintiff was caused to sustain a loss of employment and income and was caused to sustain emotional and psychological distress and harm, embarrassment, and a continuous and permanent interference with the prospect of future economic advantage and with the ability to obtain future employment.

**WHEREFORE,** plaintiff demands judgment for compensatory and punitive damages, damages for emotional distress, loss of reputation and other personal injury, consequential damages, enhancement for tax liability, reinstatement, and equitable relief on this Count of the Complaint against any or all of said defendants, jointly, severally, and alternatively, together with interest, attorney fees and costs of suit.

### THIRD COUNT
### PIERCE CLAIM
### (As to PCHS)

Plaintiff repeats and realleges the foregoing paragraphs as though fully set forth at length herein and says:

65.     Plaintiff objected to the directive by the Director to remove from the school a child's confidential file, in a matter that was under investigated by the Division of Child Protection and Permanency (DCPP).   Plaintiff had a reasonable belief that such conduct violated

FERPA (Family Educational Rights and Privacy Act) (20 U.S.C. 123g; 34 C.F.R. Part 99) in light of the sensitive and confidential nature of the information sought.

66.     Plaintiff objected when PCHS refused to honor the promise made by the Office of Head Start to pay the staff at their full rate of pay during the pandemic as a breach of contract and in violation of the New Jersey Wage Payment Law, N.J.S.A. 34:11-4.1 *et.seq.*.

67.     New Jersey common law provides that an employee has a private cause of action where an employer discharges an employee contrary to a clear mandate of public policy. <u>Pierce v. Ortho Pharm. Corp.</u>, 84 N.J. 58 (1980).

68.     As a result of the actions of the defendant(s) as aforesaid, plaintiff was caused to sustain a loss of employment and income and was caused to sustain emotional and psychological distress and harm, embarrassment, and a continuous and permanent interference with the prospect of future economic advantage and with the ability to obtain future employment.

**WHEREFORE,** plaintiff demands judgment for compensatory and punitive damages, damages for emotional distress, loss of reputation and other personal injury, consequential damages, enhancement for tax liability, reinstatement, and equitable relief on this Count of the Complaint against any or all of said defendants, jointly, severally, and alternatively, together with interest, attorney fees and costs of suit.

### FOURTH COUNT
### BREACH OF CONTRACT
### (As to PCHS)

Plaintiff repeats the allegations of the previous Counts of the Complaint and incorporates same herein by reference and further says:

54.     Defendant PCHS had a written contact with Plaintiff Giselle Galano that she would be paid 100 % of her salary for the contract period that ended June 30, 2020.

55.   The Office of Head Start made a written promise to its employees, that they would be compensated at their regular wage rate during the pandemic, and be paid for hours they normally worked pre-pandemic.

56.   Defendants Robin Nayda Burgos and Dr. Lillian M. Ramos had the authority to enter into this contract on behalf of PCHS.

56.   The Plaintiff acted in reliance of this agreement by performing the essential functions of her job based upon the promise to be paid for the work performed.   .

57.   The parties had a contract which was breached by Defendants Burgos and/or Ramos and/or PCHS when they failed to pay the Plaintiff the wages at the pre-pandemic regular rate of pay.

58.   The Plaintiff was terminated, and her contract not renewed after she objected to and questioned not being paid in accordance with the Office of Head Start, and in violation of the contract(s) between the parties.

62.   Such actions on the part of Defendants constitute a Breach of Contract.

63.   As a result of defendants' actions, the Plaintiff has incurred a loss of income including but not limited to a compensatory damages, lost profits, and such other damages which were proximately caused by the Defendants' conduct in breaching the contract.

**WHEREFORE,** plaintiff demands judgment for compensatory damages, lost profits and such other damages caused by the Breach of Contract on this count of the Complaint against any or all of said defendants, together with interest, attorney fees and costs of suit.

<u>**FIFTH COUNT**</u>
<u>**AGE DISCRIMINATION**</u>
**(As to Defendant PCHS)**

Plaintiff repeats the allegations of the previous Counts of the Complaint and incorporates same

herein by reference and further says:

69.     At the time that PCHS terminated Plaintiff's employment, she was 64 years old at the time of her termination, having a birth date of February 8, 1956, after almost 20 years of employment.

70.     Defendant PCHS took an adverse employment action against Plaintiff by terminating her employment.

71.     Defendant PCHS would not have fired Plaintiff, but for Plaintiff's age.   The allegations set forth herein demonstrate that the termination was discriminatory in nature.

72.     The conduct of defendant PCHS constitutes actionable Age Discrimination in violation of the New Jersey Law Against Discrimination, N.J.S.A. 10:5-1 *et. seq.*

73.     As a result of the actions of the defendant(2) as aforesaid, Plaintiff was caused to sustain a loss of employment and income, and was caused to sustain emotional and psychological distress and harm, embarrassment, and a continuous and permanent interference with the prospect of future economic advantage and with the ability to obtain future employment.

**WHEREFORE**, Plaintiff demands judgment against any and all of said Defendants, jointly and individually, for harm suffered as a result of defendants' conduct and seeks damages including but not limited to: back pay, lost benefits, reinstatement or front-pay, other compensatory damages, emotional distress damages, liquidated damages, equitable relief, pain and suffering, punitive damages, statutory penalties, interest, compensation for the negative tax consequences of receiving a damage award in the form of a one-time lump sum, attorneys' fees, costs of suit, and an appropriate enhancement under Rendine v. Pantzer, 141 N.J. 292 (1995), and other relief that the Court may deem just and proper, on this Count of the Complaint.

## SIXTH COUNT
## AIDING AND ABETTING ILLEGAL DISCRIMINATION AND RETALIATION
### (As to Burgos and Ramos)

Plaintiff repeats and realleges the previous counts of the Complaint and says:

74.     Individual Defendant, Robin Nayda Burgos was at all relevant times employed by PCHS as the Director of the program.

75.     Individual Defendant, Dr. Lillian M. Ramos, was   at all relevant times employed by PCHS as the Executive Director.

76.     Burgos and/or Ramos acted directly or indirectly on behalf of or in the interest of PCHS or with the consent of PCHS when they imposed adverse employment consequences on plaintiff, retaliating against plaintiff and terminating her employment.

77.     Defendants Burgos and/or Ramos had the authority to control the Plaintiff's workplace, hire and fire and discipline employees, and were members of upper management.

78.     The acts of individual defendants Burgos and/or Ramos as described herein were committed within the scope of their employment.

79.     Defendants Burgos and/or Ramos abused their authority delegated by defendant, PCHS, when they terminated the Plaintiff Giselle Galano.

80.     By virtue of the acts set forth in this Complaint, Defendants Ramos and/or Burgos aided and abetted, and/or attempted to aid and abet retaliatory and discriminatory conduct based on Age in violation of the New Jersey Law Against Discrimination (NJ LAD), N.J.S.A. 10:5-1 *et seq.*

81.     That as a result of the actions of the defendant(s) as aforesaid, Plaintiff was

caused to sustain a loss of employment and income and was caused to sustain emotional and psychological distress and harm, embarrassment, and continuous and permanent interference with prospect of future economic advantage and with the ability to obtain future employment.

**WHEREFORE,** Plaintiff demands judgment against any and all said defendants, jointly and individually, for aiding and abetting discriminatory conduct in violation of the NJ LAD, N.J.S.A. 10:5-1 *et seq.,* an award of compensatory damages, including but not limited to, back pay and benefits, front pay and benefits, consequential damages, punitive damages, emotional distress damages, equitable relief, prejudgment interest, attorney fees and cost of suit, with an appropriate enhancement under *Rendine v. Pantzer,* 141 N.J. 292 (1995), on this count of the Complaint.

## JURY DEMAND

Plaintiff hereby demands trial by jury on all issues herein pursuant to R.1:8-2(b) and R.4:35-1(a).

## DEMAND FOR DISCOVERY OF INSURANCE COVERAGE

Pursuant to R.4:10-2(b), demand is hereby made that you disclose to the undersigned whether there are any insurance agreements or policies under which any person or firm carrying on an insurance business may be liable to satisfy all or part of a judgment which may be entered in the action or to indemnify or reimburse for payment made to satisfy the Judgment. If so, please attach a copy of each, or in the alternative state, under oath and certification: (a) policy number; (b) name and address of insurer; (c) inception and expiration date; (d) names and addresses of all persons insured thereunder; (e) personal injury limits; (f) property damage limits; and (g) medical payment limits.

PAS-L-002797-21   08/31/2021 3:56:24 PM  Pg 18 of 18 Trans ID: LCV20212020299

## DEMAND FOR DOCUMENTS TO WHICH ANSWER REFERS

Pursuant to Rule 4:18-2, Plaintiff hereby demands that Defendant produce copies of each and every document or paper to which the Answer refers within five days after service of the Answer.

## DESIGNATION OF TRIAL COUNSEL

Pursuant to Rule 4:25-4, PAULA M. DILLON is hereby designated as trial counsel for Plaintiff in the within matter.

## CERTIFICATION OF NO OTHER ACTIONS

Pursuant to R.4:5-1, it is hereby certified that, to the best of our knowledge and belief, the matter in controversy is not the subject of any other action pending in any other Court or of  a pending Arbitration proceeding.   Also, to the best of our knowledge and belief, no other action or Arbitration proceeding is contemplated.   Further, other than the parties set forth in this pleading, at the present time we know of no other parties that should be joined in this action. In addition, we recognize the continuing obligation of each party to file and serve on all parties and the Court an amended certification if there is a change in the facts stated in this original certification.

## CERTIFICATION REGARDING PERSONAL IDENTIFIERS

Pursuant to Rule 1:38-7(c), I certify that confidential personal identifiers have been redacted from documents now submitted to the Court, and will be redacted from all documents submitted in the future in accordance with Rule1:38-7(c).

**GOLDMAN DAVIS KRUMHOLZ & DILLON, PC**
**Attorneys for Plaintiff**

PAULA M. DILLON

# Civil Case Information Statement

## Case Details: PASSAIC | Civil Part Docket# L-002797-21

**Case Caption:** GALANO GISSELLE  VS PASSAIC FAMILY
HEAD  START, I

**Case Initiation Date:** 08/31/2021

**Attorney Name:** PAULA MARCY DILLON

**Firm Name:** GOLDMAN DAVIS KRUMHOLZ & DILLON,
P.C.

**Address:** THREE UNIVERSITY PLZ STE 410
HACKENSACK NJ 07601

**Phone:** 2014882600

**Name of Party:** PLAINTIFF : GALANO, GISSELLE

**Name of Defendant's Primary Insurance Company**
(if known): Unknown

**Case Type:** LAW AGAINST DISCRIMINATION (LAD) CASES

**Document Type:** Complaint with Jury Demand

**Jury Demand:** YES - 6 JURORS

**Is this a professional malpractice case?**  NO

**Related cases pending:** NO

**If yes, list docket numbers:**

**Do you anticipate adding any parties (arising out of same
transaction or occurrence)?** NO

**Are sexual abuse claims alleged by: GISSELLE GALANO? NO**

## THE INFORMATION PROVIDED ON THIS FORM CANNOT BE INTRODUCED INTO EVIDENCE
### CASE CHARACTERISTICS FOR PURPOSES OF DETERMINING IF CASE IS APPROPRIATE FOR MEDIATION

**Do parties have a current, past, or recurrent relationship?** YES

**If yes, is that relationship:** Employer/Employee

**Does the statute governing this case provide for payment of fees by the losing party?** YES

**Use this space to alert the court to any special case characteristics that may warrant individual
management or accelerated disposition:**


**Do you or your client need any disability accommodations?** NO
       **If yes, please identify the requested accommodation:**


**Will an interpreter be needed?** NO
       **If yes, for what language:**


**Please check off each applicable category: Putative Class Action?** NO  **Title 59?** NO  **Consumer Fraud?** NO


I certify that confidential personal identifiers have been redacted from documents now submitted to the
court, and will be redacted from all documents submitted in the future in accordance with *Rule* 1:38-7(b)

08/31/2021
Dated

/s/ PAULA MARCY DILLON
Signed